**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DONNA LOVEJOY,<br><br>    Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,<br><br>    Defendant. | Case No. CV 09-5906 JCG<br><br>**MEMORANDUM OPINION AND ORDER** |

On August 13, 2009, plaintiff Donna Lovejoy ("Plaintiff") filed a complaint against defendant Michael J. Astrue, the Commissioner of the Social Security Administration ("Defendant" or "Commissioner"), seeking review of the denial of disability insurance benefits. [Docket No. 1.] On March 3, 2010, Defendant filed his answer, along with a certified copy of the administrative record. [Docket Nos. 10, 11.] On April 14, 2010, this matter was transferred to the calendar of the undersigned Magistrate Judge. [Docket No. 17.] Both Plaintiff and Defendant subsequently consented to proceed for all purposes before the Magistrate Judge pursuant to 28 U.S.C. § 636(c). [Docket Nos. 18, 20.] On June 17, 2010, the parties

submitted a detailed, 23-page joint stipulation for the resolution of issues presented in this case. [Docket No. 25.] The Court deems the matter suitable for adjudication without oral argument.

In sum, having carefully studied, *inter alia*, the parties' joint stipulation and the administrative record, the Court concludes the Administrative Law Judge's rejection of Plaintiff's subjective complaints – based on the ALJ's improperly substituted judgment for medical opinion and perceived inconsistencies where none meaningful exist – is not warranted on this record, and remands this matter to the Commissioner in accordance with the principles and instructions enunciated in this Memorandum Opinion and Order.

## II.
## **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff, who was 50 years of age on the date of her administrative hearing, has completed high school and two years of college. (Administrative Record ("AR") at 26, 29, 89, 99.) Her past relevant work includes employment as a material estimator, United States Post Office carrier, program manager, project manager, scheduler, and planner. (*Id.* at 17, 94, 113; *see also id.* at 29-39.)

On October 19, 2006, nearly four years ago, Plaintiff filed for disability insurance benefits ("DIB"), alleging that she has been disabled since June 2, 2005 due to hypothyroidism, fibromyalgia, and osteoporosis. (*See* AR at 53, 89, 93.) Plaintiff's application was denied initially and on reconsideration. (*Id.* at 53, 54, 57-60, 61, 62-66.)

On August 4, 2008, Plaintiff, represented by counsel, appeared and testified at a hearing before an Administrative Law Judge ("ALJ"). (AR at 26, 28-52.)

On September 2, 2008, the ALJ denied Plaintiff's request for benefits. (AR at 12-17.) Applying the five-step sequential evaluation process – which is discussed below – the ALJ found, at step one, that Plaintiff has not engaged in substantial gainful activity since her alleged onset date of disability. (*Id.* at 14.) At step two,

the ALJ found that Plaintiff suffers from severe fibromyalgia. (*Id.*)

At step three, the ALJ determined that the evidence does not demonstrate that Plaintiff's impairment, either individually or in combination, meet or medically equal the severity of any listing set forth in the Social Security regulations.[1] (AR at 14.)

The ALJ then assessed Plaintiff's residual functional capacity[2] ("RFC") and determined that she can perform light work, but "should avoid even moderate exposure to dust, fumes and gases, and should not work at heights or around hazardous machinery." (AR at 14 (bold omitted).) Based on Plaintiff's RFC, the ALJ found, at step four, that Plaintiff has the ability to perform her past relevant work as an "estimator, scheduler, planner, or project manager." (*Id.* at 17 (bold omitted).) Accordingly, the ALJ concluded that Plaintiff was not suffering from a disability as defined by the Act. (*Id.* at 12, 17.)

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. (AR at 1-3, 4.) The ALJ's decision stands as the final decision of the Commissioner.

Upon review, Plaintiff and Defendant stipulate that the ALJ fairly and accurately summarized the medical and non-medical evidence of record, except Plaintiff disputes the summary to the extent stated in her portions of the joint stipulation. (Joint Stip. at 3.)

---

[1] *See* 20 C.F.R. pt. 404, subpt. P, app. 1.

[2] Residual functional capacity is what a claimant can still do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155 n. 5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th Cir. 2007).

## II.
## **APPLICABLE LEGAL STANDARDS**

A. <u>Five-Step Inquiry To Ascertain A Cognizable Disability</u>

A claimant must satisfy three fundamental elements to be eligible for disability benefits: (1) a medically-determinable impairment; (2) the impairment prevents the claimant from engaging in substantial gainful activity; and (3) the impairment is expected to result in death or to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). A well-established five-step sequential inquiry is utilized to assess whether a particular claimant satisfies these three elements. The inquiry proceeds as follows:

<u>First</u>, is the claimant engaging in substantial gainful activity? If so, the claimant cannot be considered disabled.

<u>Second</u>, does the claimant suffer from a "severe" impairment, *to wit*, one continuously lasting at least 12 months? If not, the claimant is not disabled.

<u>Third</u>, does the claimant's impairment or combination of impairments meet or equal an impairment specifically identified as a disability by the Commissioner under 20 C.F.R. part 404, subpart P, appendix 1? If so, the claimant is automatically determined to be disabled.

<u>Fourth</u>, is the claimant capable of performing his past work? If so, the claimant is not disabled.

<u>Fifth</u>, does the claimant have the so-called "residual functional capacity" to perform some other type of work? The critical question posed here is whether the claimant can, in light of the impairment and his or her age, education and work experience, adjust to another form of gainful employment?

If a claimant is found "disabled" or "not disabled" along any of these steps, there is no need to complete the remaining inquiry. 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4); *Tackett*, 180 F.3d at 1098-99.

B. <u>Standard of Review on Appeal</u>

This Court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001, *as amended* Dec. 21, 2001). If the court, however, determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## III.
## ISSUES PRESENTED

Two disputed issues are presented for decision here:

1. Whether the ALJ properly considered the opinions of the treating physician, (*see* Joint Stip. at 4-9, 14); and

2. Whether the ALJ properly considered the testimony of Plaintiff. (*See id.* at 14-19, 21-22.)

Under the circumstances here, the Court finds the latter issue to be dispositive of this matter, and does not address the first issue.

## IV.
## **DISCUSSION AND ANALYSIS**

As identified above, Plaintiff forcefully contends that the ALJ failed to properly assess her credibility and improperly disregarded her allegations of subjective symptoms. (*See* Joint Stip. at 14-19, 21-22.) Plaintiff maintains that the "ALJ pointed to no hyperbole, material misstatement, or discrepancy in any of the statements." (*Id.* at 18.) Plaintiff also alleges that the ALJ "did not point to any specific and legitimate reason for rejecting [Plaintiff's] testimony." (*Id.*) Defendant parries that the ALJ appropriately discounted Plaintiff's credibility in light of the inconsistencies between her testimony and the medical records. (*Id.* at 19-21.)

### A. The ALJ Must Provide "Clear and Convincing" Reasons For Discounting Plaintiff's Credibility

Plaintiff, of course, carries the burden of producing objective medical evidence of his or her impairments and showing that the impairments could reasonably be expected to produce some degree of the alleged symptoms. *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). But once a plaintiff meets that burden, medical findings are not required to support the alleged severity of pain. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (*en banc*); *see also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997, *as amended* Sept. 17, 1997) ("[A] claimant need not present clinical or diagnostic evidence to support the severity of his pain.") (internal citation omitted).

Under these circumstances, an ALJ can then reject a plaintiff's subjective complaint "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." *Benton*, 331 F.3d at 1040. The ALJ may

consider the following factors in weighing a plaintiff's credibility:  (1) his or her reputation for truthfulness; (2) inconsistencies either in the plaintiff's testimony or between the plaintiff's testimony and his or her conduct; (3) his or her daily activities; (4) his or her work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains.  *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

Here, the ALJ did not find evidence of malingering.  (*See generally* AR at 12-17).  Thus, the ALJ's reasons for rejecting Plaintiff's credibility must be *clear and convincing*.  *See Benton*, 331 F.3d at 1040.  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995, *as amended* April 9, 1996); *Reddick*, 157 F.3d at 722.

   B. Plaintiff's Subjective Complaints

At the administrative hearing, Plaintiff testified that she takes Neurontin for fibromyalgia, Ambien to help her sleep, Reglan for stomach problems, Imitrex for migraines, and Synthroid for hypothyroidism.  (AR at 39-40.)  Plaintiff stated that the Neurontin causes her to "become confused too easily" and she would not be able to return to her past work due to this side effect.  (*Id.* at 39.)  Plaintiff alleged that she experiences migraines 12 to 15 times a month for approximately 40 minutes "before the Imitrex completely kicks in."  (*Id.* at 45-46.)

However, Plaintiff maintained that her migraines are "completely under control with the Imitrex."  (AR at 46.)  Plaintiff explained that she can sit for approximately 30 minutes, stand for approximately 30 minutes, and is uncertain how far she can walk.  (*Id.* at 41-42.)  She also testified that she experiences pain in her hip, shoulder, elbow, wrist, knee, ankle, and lower back joints due to fibromyalgia.  (*Id.* at 43, 49.)

Plaintiff stated that despite sleeping eight hours at night, she feels "tired" in the morning and indicated that the "tired feeling" "never" goes away.  (AR at 45.)

7

1   Plaintiff receives "financial help" from her parents "to make the mortgage" and
2   cannot "afford to go out to eat." (*Id.* at 40-41, 44.) Plaintiff maintained that she quit
3   her job in 2005 because she "wasn't able to handle the two and a half hour commute
4   back and forth and do the job also." (*Id.* at 34.) Plaintiff stated that she has a
5   California driver's license with no restrictions. (*Id.* at 49.)

6       C.    <u>The ALJ's Purported Reasons For Finding Testimony Non-Credible</u>

7   In rejecting Plaintiff's credibility, the ALJ found that Plaintiff's "medically
8   determinable impairments could reasonably be expected to produce the alleged
9   symptoms; however, [Plaintiff's] statements concerning the intensity, persistence
10  and limiting effects of these symptoms are not credible to the extent they are
11  inconsistent with the [RFC] assessment[.]" (AR at 15.) Specifically, the ALJ
12  seemed to conclude that Plaintiff's work history, or lack thereof, was unhinged from
13  her alleged impairments and this disconnect undermined her credibility:

14      [Plaintiff] asserted that she worked 2 months in 2008 in inventory
15      control but quit not because she could not do the job physically
16      but because her concentration was impaired by the Neurontin she
17      took. . . . [Plaintiff] asserted quite definitely joint pain and
18      specified the shoulders, elbows, wrists, ankles, low back.
19      Fibromyalgia is defined as soft tissue and not joint pain. Physical
20      examinations have shown no joint abnormalities and hip x-rays
21      have shown only minimal degenerative changes of no reported
22      clinical significance. [Plaintiff] said she takes Ambien
23      successfully for a full 8 hours sleep but asserted she was always
24  tired. She said Imitrex controlled "migraines" but then said she had them 12-15
25  times a month (uncorroborated by anything of record) and that they required her to
26  lie down 40 minutes with each. She denied any productive activity, but does drive
27  and has a California Driver's license without restriction. . . . [Plaintiff's]
28  representative argued that [Plaintiff's application] should be granted because she had

earned $60,000+ in one year and said she would rather be working. Prior decent earnings certainly do not establish that [Plaintiff] simply did not conclude that she would rather not be working. She said in fact that she quit her job as an estimator in 2005 (the alleged onset date) because the company moved and she did not want to make the long drive.

(*Id.*)

The ALJ also rejected Plaintiff's credibility because she "apparently saw a mental health provider one time and gave a very questionable history of being 'homeless', when she in fact lives in the affluent community of Canyon Lake." (AR at 16.)

      D.    <u>Plaintiff's Testimony Merits Consideration</u>

Having examined the AR, the Court is persuaded that the ALJ failed to provide clear and convincing reasons and/or substantial evidence for discounting Plaintiff's credibility. The Court's conclusion rests on seven reasons.

First, as the ALJ concluded, (*see* AR at 15), Plaintiff provided sufficient medical evidence of underlying impairments that were reasonably likely to cause the symptoms she described. There are numerous indicia in the medical record supporting Plaintiff's ailments, including the following ten instances:

    1.    Treatment note, dated May 3, 2006, indicated Plaintiff was suffering from hypothyroidism and migraines. (AR at 156.)

    2.    Treatment note, dated January 10, 2006, prescribed medication for hypothyroidism and migraines. (*Id.* at 157.)

    3.    Treatment note, dated November 14, 2005, reported Plaintiff's complaints of "fatigue" and "tremor." (*Id.* at 160.)

    4.    "New Patient Modality Intake" form, dated July 12, 2006, indicated pain in neck, low back and hips. (*Id.* at 186.)

    5.    Treatment report, dated August 4, 2006, stated that Plaintiff was diagnosed with fibromyalgia "two weeks before from her treating rheumatologist"

1 and reported pain in head and neck regions and exhibited symptoms of "blurred
2 vision, dizziness, ringing in the ears, sleep disturbance, stiffness and localized
3 tingling." (*Id*. at 194.)

4     6.     Mental health evaluation note reported juvenile arthritis, thyroid
5 dysfunction, and fibromyalgia. (*Id*. at 213-215.)

6     7.     Treatment note, dated April 28, 2008, attributed shoulder pain to
7 cervical strain and fibromyalgia. (*Id*. at 310.)

8     8.     Treatment note, dated January 3, 2008, indicated headaches, shoulder
9 strain, cervical strain, and back pain. (*Id*. at 312.)

10     9.     Treatment note, dated June 9, 2008, diagnosed osteoporosis and
11 fibromyalgia and found "trigger points." (*Id*. at 332.)

12     10.     Treatment note, dated October 9, 2007, diagnosed osteoarthritis,
13 osteoporosis, and fibromyalgia. (*Id* at 337.)

14     Second, the ALJ's rejection of Plaintiff's statement that she experienced "joint
15 pain" even though fibromyalgia "is defined as soft tissue and not joint pain," (AR at
16 15), fails to meet the clear and convincing standard. Contrary to the ALJ's assertion
17 that fibromyalgia is defined solely by "soft tissue and not joint pain," fibromyalgia
18 is "characterized by 'chronic and frequently difficult to manage pain in muscles and
19 soft tissues surrounding *joints*.'" *Cusson v. Liberty Life Assurance Co. of Boston*,
20 592 F.3d 215, 218 (1st Cir. 2010) (internal citations omitted) (emphasis added).
21 Accordingly, Plaintiff's statement that she experiences "joint pain" does not
22 contradict the fact that Plaintiff suffers from fibromyalgia.

23     Moreover, Plaintiff testified that her doctors have attributed her "joint pain" to
24 fibromyalgia and Plaintiff's statement is supported by the record. (*See* AR at 43.)
25 Accordingly, the ALJ's disagreement with Plaintiff's treating physicians' diagnosis
26 of her symptoms does not constitute a legally permissible reason for rejecting
27 Plaintiff's testimony. *Banks v. Barnhart*, 434 F.Supp.2d 800, 805 (C.D. Cal. 2006)
28 ("An ALJ cannot arbitrarily substitute his own judgment for competent medical

opinion, and he must not succumb to the temptation to play doctor and make his own independent medical findings.") (internal quotation marks, alterations and citations omitted).

Further, the ALJ's rejection of Plaintiff's testimony because "[p]hysical examinations have shown no joint abnormalities and hip x-rays have shown only minimal degenerative changes" reaches too far. (AR at 15.) As the Ninth Circuit has explained, fibromyalgia's "cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia. The principal symptoms are 'pain all over,' fatigue, disturbed sleep, stiffness, and . . . multiple tender spots[.]" *Rollins v. Massanari*, 261 F.3d 853, 855 (9th Cir. 2001) (internal quotation marks and citation omitted). Thus, the lack of "joint abnormalities" and "degenerative changes" does not undermine Plaintiff's credibility. To the contrary, it supports Plaintiff's claim that she suffers from fibromyalgia. It also bears noting that it is the Ninth Circuit's teaching in *Rollins* that buttresses the need to properly weigh a plaintiff's testimony when the disability of fibromyalia is advanced.

Third, the Court fails to see how Plaintiff's statement that "she takes Ambien successfully for a full 8 hours sleep" belies her assertion that "she was always tired." (AR at 15.) The record supports Plaintiff's statement that she is "always tired." (*See*, *e.g.*, *id.* at 106 (Function Report stating that Plaintiff shops "[a]s seldom as possible . . . because it makes me too tired[]"), 279 (evaluating physician report indicating Plaintiff suffers from "chronic fatigue" and "tiredness").) Additionally, there is objective evidence in the record that would account for Plaintiff's persistent "tiredness" despite Ambien's ability to provide her with eight hours of sleep. For instance, the ALJ questioned Plaintiff extensively regarding her Neurontin prescription, (*see id.* at 48), which she explained makes her nonfunctional. (*See id.* at 39 (explaining Neurontin makes her "confused too easily")); *see also* www.medlineplus.gov (Neurontin side effects include drowsiness, tiredness or

11

weakness, dizziness, unsteadiness, anxiety, memory problems and strange or unusual thoughts). Accordingly, the ALJ's reason is not supported by substantial evidence.

Fourth, the Court, unlike the ALJ, does not necessarily perceive a meaningful contradiction between Plaintiff's statement that Imitrex "controlled" her migraines and her assertion that she experiences approximately 12 to 15 migraines per month. (*See* AR at 15.) In response to the ALJ's question of whether her migraines are "completely under control with the Imitrex," Plaintiff responded "Yes." (*Id.* at 45.) However, Plaintiff further elaborated that she feels "relief" within 40 minutes of taking the medication and averages 12 to 15 migraines per month. (*Id.* at 46.) Further, the ALJ's conclusion that her migraines are "uncorroborated," (*id.* at 15), is plainly not supported by the medical record. (*See*, *e.g.*, *id.* at 156 (treatment note dated May 3, 2006 indicating Plaintiff suffering from migraines), 157 (treatment note dated January 10, 2006 prescribing medication for migraines).)

Fifth, the ALJ rejected Plaintiff's credibility because she quit her job in inventory control in 2008 "not because she could not do the job physically but because her concentration was impaired by the Neurontin she took" and because Plaintiff "quit her job as an estimator in 2005 . . . because the company moved and she did not want to make the long drive." (AR at 15.) However, with respect to her 2008 position, Plaintiff testified that she "wasn't able to handle the job[ because she] became confused too easily[]" due to the "pain medicine [she] was taking." (*Id.* at 30.) Plaintiff did not testify whether she could or could not "do the job physically." (*See generally id.* at 28-52.)

Further, in explaining her 2005 position, Plaintiff stated she "wasn't able to handle the two and a half hour commute back and forth and *do the job also*." (AR at 34 (emphasis added).) Plaintiff's statement did not solely refer to her ability to make a two and a half hour commute to her job. (*See generally id.*) Thus, the ALJ's paraphrasing of Plaintiff's testimony – that is, "she did not want to make the long drive" – is not entirely accurate. *See Reddick*, 157 F.3d at 722-23 ("[T]he ALJ

12

1  developed his evidentiary basis by not fully accounting for the context of materials
2  or all parts of the testimony and reports.  His paraphrasing of record material is not
3  entirely accurate regarding the content or tone of the record.").
4        Sixth, the ALJ emphasized Plaintiff's ability to drive and possession of a
5  "California's Driver's license without restriction" as a reason for rejecting her
6  credibility.  (AR at 15.)  However, the ALJ does not elucidate, as he should, how
7  Plaintiff's ability to drive weakens her claims, such as she can sit for approximately
8  30 minutes.  The only testimony Plaintiff provided regarding her ability to drive was
9  that "the farthest" she drove in 2008 was 11 miles.  (*Id.* at 49.)  Further, the ALJ fails
10 to demonstrate how Plaintiff's ability to drive translates into an ability to perform
11 her past relevant work as an estimator, scheduler, planner, or project manager.  *See*
12 *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990) (ALJ errs in failing to
13 make a finding to the effect that ability to perform daily activities translated into the
14 ability to perform appropriate work); *Reddick*, 157 F.3d at 722 (only if a plaintiff's
15 level of activity is inconsistent with her alleged limitations will these activities have
16 any bearing on claimant's credibility); *see also Vertigan v. Halter*, 260 F.3d 1044,
17 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a
18 plaintiff has carried on certain daily activities, such as grocery shopping, driving a
19 car, or limited walking for exercise, does not in any way detract from her credibility
20 as to her overall disability.").
21       Seventh and finally, the ALJ erred in discounting Plaintiff's credibility based
22 on her statement that she was "homeless."  (AR at 16.)  As the ALJ explained,
23 Plaintiff "saw a mental health provider *one* time and gave a very questionable
24 history of being 'homeless.'"  (*Id.* (emphasis added).)  The Court has reviewed the
25 record and found only one instance in which Plaintiff made a statement that she was
26 "homeless."  (*See id.* at 213.)  However, a single line of testimony – standing alone –
27 is insufficient to constitute substantial evidence on which to make a negative
28 credibility finding, although the Court is mindful that disingenuousness is not

1  welcomed in any capacity. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 884 (9th
2  Cir. 2006) (where ALJ found claimant's testimony "[']equivocal, based on his
3  conflicting testimony and reports to doctors[,']" court determined that "a cursory
4  finding that a single line of testimony is 'equivocal'" is insufficient to constitute
5  substantial evidence); Social Security Ruling ("SSR") 96-7P,[3] 1996 WL 374186, at
6  *4 ("The finding on the credibility of the individual's statements cannot be based on
7  an intangible or intuitive notion about an individual's credibility. The reasons for
8  the credibility finding must be grounded in the evidence[.]").

9     In any event, to the extent the record was unclear as to Plaintiff's living
10 situation, the ALJ was obligated to develop the record to clarify the ambiguity. *See*
11 20 C.F.R. §§ 404.1512(e)(1) ("We will seek additional evidence or clarification
12 from your medical source when the report from your medical source contains a
13 conflict or ambiguity that must be resolved, the report does not contain all the
14 necessary information, or does not appear to be based on medically acceptable
15 clinical and laboratory diagnostic techniques.") & 416.912(e)(1) (same); *see also*
16 *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) ("The ALJ's duty to
17 supplement a claimant's record is triggered by ambiguous evidence, the ALJ's own
18 finding that the record is inadequate or the ALJ's reliance on an expert's conclusion
19 that the evidence is ambiguous."); *see also Higbee v. Sullivan*, 975 F.2d 558, 561
20 (9th Cir. 1992, *as amended* Sept. 17, 1992) (*per curiam*) (Although it is plaintiff's
21 burden to provide sufficient evidence of entitlement of benefits, it has "long [been]
22 recognized that the ALJ is not a mere umpire at [an administrative hearing], but has

---

[3] "The Commissioner issues Social Security Rulings [("SSRs")] to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the SSA. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1203 n. 1 (9th Cir. 2001) (internal citations omitted).

an independent duty to fully develop the record[.]"). However, Plaintiff did not state, nor did the ALJ question her at the administrative hearing, whether or not she was currently or at any point homeless in her view. (*See generally* AR at 26-52.)

## V.
## REMAND IS APPROPRIATE

This Court has discretion to remand or reverse and award benefits. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989, *as amended* Oct. 19, 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000, *as amended* May 4, 2000), *cert. denied*, 531 U.S. 1038 (2000). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke*, 379 F.3d at 595-96; *Harman*, 211 F.3d at 1179-80.

Here, there are outstanding issues which must be resolved before a final determination can be made. On remand, the ALJ shall reconsider Plaintiff's subjective complaints of excess pain and the resulting functional limitations, and either credit Plaintiff's testimony or provide clear and convincing reasons supported by substantial evidence for rejecting them. In addition, if necessary, the ALJ shall obtain additional information and clarification regarding Plaintiff's functional limitations. The ALJ shall reassess the medical opinions in the record and provide sufficient reasons under the applicable legal standard for rejecting any portion of the medical opinions. The ALJ shall then proceed through steps four and five to

determine what work, if any, Plaintiff is capable of performing.[4/]

Based on the foregoing, IT IS ORDERED THAT judgment shall be entered **REVERSING** the decision of the Commissioner denying benefits and **REMANDING** the matter for further administrative action consistent with this decision.

Dated: 7/19/2010                                  _____

Hon. Jay C. Gandhi
United States Magistrate Judge

---

[4/] In light of the Court's remand instructions, it is unnecessary for the Court to address Plaintiff's remaining contention. (*See* Joint Stip. at 4-9, 14.)